*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 16, 2020

v

BRYAN SCOTT REYNOLDS,

Defendant-Appellant.

No. 346665
Jackson Circuit Court
LC No. 17-005385-FH

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of resisting or obstructing a police officer, MCL 750.81d(1), for which he was sentenced to 270 days' imprisonment. We reverse.

## I. FACTUAL BACKGROUND

In September 2017, Jackson County Police Department (JCPD) Officer Rachel Kuhn initiated a traffic stop at approximately 1:15 a.m. on the basis of defendant's driving. Officer Kuhn was in a marked police vehicle, and JCPD Detective Aaron Grove was with her during the traffic stop. Defendant exited a parking lot without his vehicle headlights on and made a right turn to the left northbound lane near the middle turning lane, rather than the closer, right northbound lane. Officer Kuhn and Detective Grove indicated that this behavior constituted motor vehicle violations and that they suspected intoxicated driving.

Officer Kuhn activated the overhead lights on the police vehicle, but the lights did not remain activated. Defendant then moved to the middle turning lane of the roadway and turned into a restaurant parking lot. According to Officer Kuhn, defendant stopped at an angle such that she could not initially park straight behind defendant's vehicle. Officer Kuhn began to reposition the police vehicle, but defendant exited his vehicle. Officer Kuhn and Detective Grove instructed defendant several times to return to his vehicle. According to the police officers, defendant continued to approach Officer Kuhn and Detective Grove and, at one point, moved his hands to the small of his back, which concerned the police officers that defendant could have a concealed weapon. Detective Grove repeatedly instructed defendant to "get down on the ground." Because

-1-

defendant did not comply, Detective Grove drew his service weapon and aimed it toward the ground.

Defendant again did not comply, so Detective Grove forced defendant to the ground by placing his hands onto defendant's shoulders. When defendant did not comply with Detective Grove's instruction to put his hands behind his back, Detective Grove struck defendant's thigh with his knee according to JCPD training procedures and placed defendant's hands behind his back. According to Detective Grove, defendant grabbed Detective Grove's wrists as he held defendant's hands behind his back. Detective Grove responded by giving defendant an open-hand stun to his forehead. Detective Grove also pulled defendant's hair pursuant to JCPD procedures to control him and compel him to comply with instructions when defendant yelled and threatened the police officers. The police officers thereafter arrested defendant.

According to defendant, he willfully laid on the ground and was trying to comply with the police officers' instructions. Defendant testified that, while he was on the ground, Detective Grove sat on his back, punched defendant's head, used his knee to hit defendant between defendant's legs, and hit defendant with his elbows and forearm. Defendant indicated that he "got kneed about six times in [his] rear end." Defendant testified that Officer Kuhn pulled his hair and dragged him across the ground. Defendant also testified that he did not grab Detective Grove's hand or wrist. The jury found defendant guilty of resisting or obstructing a police officer. Defendant appeals.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his conviction. We disagree.

This Court reviews de novo whether there was sufficient evidence to support a conviction. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). This Court is required to draw all reasonable inferences and credibility determinations in favor of the jury verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). This is because "[j]uries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended 441 Mich 1201 (1992) (quotation marks and citation omitted). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (citation omitted).

MCL 750.81d protects police officers "who are lawfully engaged in conducting the duties of their occupations, from physical interference or the threat of physical interference." *People v Morris*, 314 Mich App 399, 411; 886 NW2d 910 (2016). MCL 750.81d provides, in relevant part:

> (1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of

a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

* * *

(7) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

(b) "Person" means any of the following:

(*i*) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: " '(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.' " *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (citation omitted). Additionally, the lawfulness of the police officer's actions is an element of the offense. *Id*. at 491-492.

If a police officer reasonably suspects, on the basis of the police officer's observations, that "criminal activity may be afoot," the police officer may conduct a traffic stop to investigate the circumstances that provoke suspicion. *Terry v Ohio*, 392 US 1, 30; 88 S Ct 1868; 20 L Ed 2d 889 (1968); see also *People v Steele*, 292 Mich App 308, 318; 806 NW2d 753 (2011). A police officer's reasonable suspicion of a traffic law violation justifies a traffic stop. *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016).

In this case, the testimony and evidence presented during the trial was sufficient to demonstrate that defendant resisted or obstructed Officer Kuhn and Detective Grove while they were performing their lawful duties. The police officers testified that defendant exited his vehicle and quickly approached them, which prevented them from completing the traffic stop. Officer Kuhn and Detective Grove also testified that defendant appeared angry, upset, or frustrated as he approached them and that he reached behind his back, which could indicate that he had a concealed weapon. Additionally, the police officers instructed defendant several times, first to return to his vehicle and then to get on the ground. Therefore, a rational jury could find that defendant obstructed Officer Kuhn and Detective Grove with the threatened use of physical interference or force when he approached the police officers during the traffic stop and reached behind his back. A rational jury could also find that defendant obstructed the police officers by knowingly failing to comply with their commands. See *Morris*, 314 Mich App at 415.

Further, defendant knew that Officer Kuhn and Detective Grove were police officers who were performing their police duties. The police officers drove a marked patrol vehicle when they initiated the traffic stop, and both police officers were wearing their patrol uniforms. Officer Kuhn

-3-

and Detective Grove testified that Officer Kuhn activated the overhead police vehicle lights to initiate the traffic stop. Finally, Officer Kuhn and Detective Grove gave defendant commands to return to his vehicle, to get down on the ground, and to put his hands behind his back during the traffic stop. Although defendant testified at trial that he did not see the police vehicle overhead lights, there was evidence to support that Officer Kuhn activated the police vehicle lights to initiate the traffic stop. It was the jury's role to make credibility determinations and to weigh the evidence. See *Dunigan*, 299 Mich App at 582. A rational jury could determine that defendant knew that Officer Kuhn and Detective Grove were performing their police duties. See *Morris*, 314 Mich App at 415.

Finally, Officer Kuhn's and Detective Grove's actions were lawful. The police officers' traffic stop was based on a reasonable suspicion that defendant was violating traffic laws. Defendant drove on a roadway without the headlights of his vehicle illuminated. Defendant also made a right turn to exit the parking lot and entered the left northbound lane, rather than the right northbound. Both of these acts were violations of the Michigan Vehicle Code. See MCL 257.684; MCL 257.686; MCL 257.647(1)(a). Defendant's traffic violations justified Officer Kuhn and Detective Grove's traffic stop. See *Simmons*, 316 Mich App at 326.

Therefore, there was sufficient evidence to support the jury's verdict that defendant resisted or obstructed a police officer performing his or her lawful duties. See *Quinn*, 305 Mich App at 491. This evidence supported the jury's credibility determinations and the jury verdict. See *Nowack*, 462 Mich at 400; *Dunigan*, 299 Mich App at 582. When viewed in the light most favorable to the prosecution, the evidence and testimony presented at trial were sufficient to support defendant's conviction of resisting or obstructing a police officer. See *Harris*, 495 Mich at 126; *Morris*, 314 Mich App at 413-415.

## B. JURY INSTRUCTIONS

Defendant argues that the trial court provided erroneous instructions to the jury regarding the elements of resisting or obstructing a police officer. We generally review de novo claims of instructional error. *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009). However, "to preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003); see also MCR 2.512(C). In this case, defense counsel agreed that the jury instructions were satisfactory before the trial court instructed the jury, and defense counsel affirmed that he had no objections to the trial court's instructions to the jury. We conclude that defense counsel waived this issue by affirmatively approving the jury instructions. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). However, we will address this issue in the context of defendant's ineffective assistance of counsel claim.

## C. PROSECUTORIAL MISCONDUCT

Defendant argues that he was denied a fair and impartial trial on the basis of prosecutorial misconduct. Defendant argues that the prosecutor committed misconduct by failing to introduce the police vehicle video recording with "trigger" indicator data, presenting false testimony, questioning defendant regarding a witness's credibility, and arguing facts that were not in evidence. We disagree.

Defendant did not object at trial to the prosecutor's alleged misconduct and did not argue on appeal or demonstrate that objections during the trial could not have cured any alleged prosecutorial misconduct. Therefore, this issue is not properly preserved for appellate review. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

Generally, this Court reviews de novo claims of prosecutorial misconduct to determine whether defendant was denied a fair and impartial trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). However, the failure to object to prosecutorial misconduct at trial limits our review to whether there was plain error affecting the defendant's substantial rights. *Id*. Even if there was a plain error affecting a defendant's substantial rights, this Court "must exercise its discretion in deciding whether to reverse," and "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (quotation marks and citations omitted; second alteration in original).

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Generally, prosecutors are afforded great latitude regarding their arguments and conduct during a trial. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). A prosecutor may argue the evidence and reasonable inferences from the evidence as it relates to the facts and the prosecutor's theory of the case. *Id*. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70. The prosecutor may question a defendant as to whether the defendant disputed a witness's testimony or whether the defendant had a different version of the facts in order to ascertain which facts are in dispute. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003). An improper statement does not require reversal when the prosecutor is responding to defense counsel's argument. *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001).

"It is inconsistent with due process when the prosecution allows false testimony from a state's witness to stand uncorrected." *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). A prosecutor may not knowingly use false testimony, and a prosecutor has an affirmative duty to correct any false testimony. *Id*. at 475-476. A prosecutor may not make a statement of fact that is not supported by the evidence or mischaracterize the evidence presented during the trial. *Ackerman*, 257 Mich App at 450; *Watson*, 245 Mich App at 588. It is improper for a prosecutor to ask a defendant to comment on the credibility of the prosecution's witness because the defendant's opinion on the witness's credibility is not probative. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985).

In this case, it was not improper for the prosecutor to question Detective Grove and Officer Kuhn regarding the incident. Defendant did not demonstrate that Officer Kuhn's and Detective Grove's testimonies that they activated the police overhead lights was false testimony. Officer Kuhn and Detective Grove both testified that Officer Kuhn activated the police lights but that the lights did not remain on. Additionally, defendant told the police officers during the traffic stop that he did not realize that the police officers were "flashing for me." This evidence supports that the police vehicle overhead lights were on at some point before defendant stopped his vehicle.

Because there was evidence to support Officer Kuhn's and Detective Grove's testimonies, this evidence was not false.

It is unclear whether the jury was able to view the version of the police vehicle video recording with the "trigger" indicators that showed when the vehicle lights or brakes were used. However, defendant failed to demonstrate that the prosecutor did not act in good faith to admit the police vehicle video recording evidence. Therefore, the prosecutor did not commit misconduct by questioning Officer Kuhn and Detective Grove regarding the police overhead lights and by admitting the police vehicle video recording. See *Smith*, 498 Mich at 475.

Although defendant does not identify when the prosecutor asked defendant to comment on Detective Grove's credibility, it appears that the prosecutor questioned defendant regarding whether he put his hands behind his back and whether Detective Grove had a reason to lie about that fact. Examining the prosecutor's questions in the context of cross-examination, the prosecutor improperly asked defendant to comment on Detective Grove's credibility and whether Detective Grove had lied during his testimony. Admittedly, the prosecutor did not directly ask defendant whether Detective Grove had lied during his testimony or whether defendant believed that Detective Grove was a liar. Cf. *Buckey*, 424 Mich at 16-17. The prosecutor asked the question as a hypothetical, conditional question. However, this question invited defendant to opine whether Detective Grove lied during his testimony and to label Detective Grove as a liar. The prosecutor asked defendant to comment on Detective Grove's credibility, and therefore, the prosecutor's questioning regarding Detective Grove's testimony was improper. See *Buckey*, 424 Mich at 17; cf. *Ackerman*, 257 Mich App at 449.

Notwithstanding the improper questioning, the trial court's instructions cured the error. The trial court instructed the jury at the beginning of the trial and at the close of trial that the parties' arguments and questions were not evidence. The trial court also instructed the jury that it was required to determine the facts of the case and to determine whether all or part of a witness's testimony is credible. Because jurors are presumed to follow their instructions, the curative instruction weighs against the conclusion that the prosecutor committed misconduct. See *Stevens*, 498 Mich at 177, 190; *Ackerman*, 257 Mich App at 449.

Regarding the prosecutor's statements during closing argument, the prosecutor did not improperly argue the evidence of the case and the prosecutor's theory of the case. There were facts in evidence to support the prosecutor's arguments during his closing and rebuttal arguments. Officer Kuhn and Detective Grove testified that: Officer Kuhn activated the police vehicle overhead lights to initiate a traffic stop, defendant exited his vehicle, defendant approached the police officers, and defendant reached behind his back, which concerned the police officers that defendant had a weapon. Defendant's behavior prevented the police officers from completing the traffic stop. Additionally, there was evidence and testimony presented at trial that defendant did not comply with the police officers' instructions. The evidence supported the conclusion that defendant obstructed the police officers' performance of their duties.

Additionally, the prosecutor's statement regarding Detective Grove's credibility and defense counsel's opportunity to cross-examine or impeach Detective Grove with the information contained in a police report was not improper. The prosecutor stated that Detective Grove's testimony was consistent with "what happened" but did not state that Detective Grove's testimony

was consistent with police reports, which were not introduced as evidence. The prosecutor's argument was based on Officer Kuhn's testimony and the police vehicle video recording that showed that defendant approached the police officers, failed to comply with the police officers' instructions, and reached behind his back. Furthermore, the prosecutor made these statements during his rebuttal argument in response to defense counsel's closing argument regarding the police reports. Therefore, any improper statement by the prosecutor regarding Detective Grove's credibility and defense counsel's opportunity to cross-examine or impeach Detective Grove does not warrant reversal. See *Watson*, 245 Mich App at 593; see also *Ackerman*, 257 Mich App at 450.

Regarding the prosecutor's statement of the law, the prosecutor did not include the third element of the offense during his closing argument. Although the prosecutor's statement of the law was incorrect, the prosecutor's argument on its face did not deny defendant a fair and impartial trial, unlike when a prosecutor asks a nondefendant witness to comment on the credibility of other witnesses or on the guilt or innocence of the defendant. See *Buckley*, 424 Mich at 17. Rather, the *instructional* error denied defendant a fair and impartial trial. Defendant did not demonstrate that the jury specifically relied on the prosecutor's incorrect statement of the law when it found defendant guilty of resisting or obstructing a police officer.

We conclude that the prosecutor's questions and arguments were not plainly erroneous. Defendant did not demonstrate that it was reasonably likely that the prosecutor's presentation of the police vehicle video recording that was introduced at trial, closing argument, questioning of defendant, or questioning of Detective Grove and Officer Kuhn denied him a fair and impartial trial. See *Bennett*, 290 Mich App at 475. Additionally, defendant did not demonstrate that he was actually innocent or that the alleged errors of prosecutorial misconduct seriously affected the fairness of the trial. Therefore, defendant did not establish that there was a plain error on the basis of prosecutorial misconduct that affected his substantial rights. See *Carines*, 460 Mich at 763-764.

## D. JUDICIAL MISCONDUCT

Defendant argues that he was denied a fair and impartial trial on the basis of judicial misconduct. Defendant argues that the trial court committed misconduct by conducting and predicting the result of an *in camera* review of the JCPD investigative report regarding the incident, questioning Detective Grove and Officer Kuhn during the trial, and stating an intention to enter the jury room after deliberations had begun. We disagree.

Defendant did not raise a claim of judicial bias or misconduct before the trial court. Therefore, this issue is not preserved for appellate review. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). This Court reviews unpreserved issues for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich 763-764. Even if there was a plain error affecting a defendant's substantial rights, this Court "must exercise its discretion in deciding whether to reverse," and "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Id.* at 763 (quotation marks and citations omitted; second alteration in original).

A defendant has a right to a neutral and detached judge. *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 170. A defendant must overcome "a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171. In considering the totality of the circumstances, this Court reviews various factors, including

> [T]he nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

A prosecutor must provide, upon request, any exculpatory information or evidence known to the prosecuting attorney and any police report concerning the case. See MCR 6.201(B)(1) and (2). A trial court may conduct an *in camera* review of records that may be privileged to determine whether that information is material and necessary to the defense. MCR 6.201(C)(2) provides:

> If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.

If the *in camera* review reveals evidence that is necessary to the defense, the trial court shall order that such necessary evidence be made available to defense counsel. MCR 6.201(C)(2)(b).

Under MRE 614(b), "[t]he court may interrogate witnesses, whether called by itself or by a party." The primary purpose of judicial questioning is to clarify. *Stevens*, 498 Mich at 173. Therefore, a trial judge may question a witness "to produce fuller and more exact testimony or to elicit additional relevant information." *Id*.

A trial court instructs the jury on the law and controls the proceedings during a trial. See MCR 2.512(B)(2); MCR 2.513(A) and (B); see also *People v Traver*, 502 Mich 23, 31-33; 917 NW2d 260 (2018). Specifically, the trial court must provide the jury with a written copy of the final jury instructions for the jury's deliberation. MCR 2.513(N)(3).

In this case, the trial court's conduct was not improper. Defendant filed a motion for discovery to receive the JCPD internal investigation report that was produced as a result of his complaint to the JCPD that the police officers used excessive force during the traffic stop and arrest. During the hearing regarding defendant's motion for discovery, defendant argued that the JCPD internal investigative report could contain exculpatory information regarding problems and improper conduct that occurred while Officer Kuhn was training on the night of his arrest. The trial court stated,

> All right. Well, the court is gonna [sic] grant the defense relief at least to the extent of an in camera review. So, if they can at least give me a written brief

-8-

summary of what occurred, then it probably, as you are—that I would probably agree that there is nothing that needs to be turned over. But I will require it's [sic] production in the next 21 days so the court can review it in camera. All right?

The trial court's remarks before receiving the internal investigative report did not "predict" that it would deny defendant's discovery request. Read in context of the parties' arguments, the trial court used a conditional statement to suggest that it would likely deny defendant's discovery request if the investigative report resulted in a finding of no wrongdoing by the police officers. A finding of no wrongdoing by the police officers would render the internal investigative report not necessary to the defense, which would support the denial of defendant's motion for discovery of the report. Additionally, although it is ambiguous whether the trial court reviewed the entire JCPD internal investigative report or a memorandum of the report, defendant consistently requested that the trial court review the entire investigative report. The trial court indicated that it reviewed the report with the trial court's staff and determined that defendant was not entitled to review the report. It appears that the trial court reviewed the investigative report and confirmed that it resulted in a finding of no wrongdoing, which supported that the full investigative report did not contain exculpatory information and provided a legal basis to deny defendant's motion for discovery. See generally MCR 6.201(C)(2); see, e.g., *Jackson*, 292 Mich App at 599.[1] Furthermore, the trial court's remark did not improperly influence the jury because the jury did not hear the remark. See *People v Conley*, 270 Mich App 301, 310; 715 NW2d 377 (2006). Therefore, the trial court's remark regarding the *in camera* review and the denial of defendant's motion for discovery was not plainly erroneous.

The trial court's questioning of Officer Kuhn and Detective Grove clarified JCPD procedures, training, and expectations for civilians. Each of the trial court's questions were relevant to the questions that the parties asked the police officers regarding their training and experience as police officers. These questions produced more comprehensive testimony from Officer Kuhn and Detective Grove regarding their responses to defendant's behavior on the basis of their JCPD training and experience. Although the police officers' training did not appear to be particularly complex, the witnesses discussed their specialized training and situation-specific response procedures. Therefore, the trial judge's questions clarified Officer Kuhn's and Detective Grove's testimonies and aided the jury in understanding additional relevant information regarding police training and procedures. See *Stevens*, 498 Mich at 173, 183.

Moreover, the trial court instructed the jury at the beginning of the trial and at the close of trial that the trial court's comments, rulings, questions, and instructions were not evidence and that the jury should not pay any attention to the trial court's opinion of the case if the jury believes that the trial court has such an opinion. Because jurors are presumed to follow their instructions, this curative instruction weighs against the conclusion that the trial court's conduct was improper. See

---

[1] Moreover, defense counsel questioned Detective Grove regarding the internal investigation, and defendant had the opportunity to discover the information and conclusions contained in the internal investigation report during the trial.

*Stevens*, 498 Mich at 177, 190. Therefore, the trial court's questioning of Officer Kuhn and Detective Grove was not plainly erroneous. See *id*. at 171; *Carines*, 460 Mich at 763-764.

Regarding the trial court's communication with the jury, the trial court fulfilled its responsibilities to instruct the jury on the law of the case and to provide the jury with a written copy of the final jury instructions for the jury's deliberation. See MCR 2.513(N)(3). Arguably, it is ambiguous whether the trial court or the court clerk delivered the written jury instructions to the jury. However, defendant presented no evidence that either the trial court or the court clerk improperly influenced or communicated with the jurors beyond delivering a written copy of the jury instructions. Therefore, the trial court's apparent communication with the jury regarding the written jury instructions was not plainly erroneous, and defendant failed to demonstrate that the trial court in fact communicated with the jury. See *Stevens*, 498 Mich at 171; *Carines*, 460 Mich at 763-764.

We conclude that defendant did not overcome the presumption of judicial impartiality. Defendant did not establish that it was reasonably likely that the trial court's remark regarding defendant's motion for discovery, questioning of Officer Kuhn and Detective Grove, and alleged communication with the jury improperly influenced the jury by creating the appearance of advocacy or partiality against a party. See *Stevens*, 498 Mich at 171. Therefore, defendant did not establish that there was a plain error on the basis of judicial misconduct that affected his substantial rights. See *Carines*, 460 Mich at 763-764.

## E. INEFFECTIVE ASSISANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel. He contends that counsel was ineffective for failing to insist on the admission of the version of the police vehicle video recording that included the "trigger" indicator data, failing to question and impeach Detective Grove and Officer Kuhn with the "trigger" indicator data, failing to correct the jury instruction error, failing to request criminal responsibility and competency evaluations, failing to object to prosecutorial misconduct, and failing to object to judicial misconduct. We agree regarding the jury instruction error, but we disagree regarding defendant's additional ineffective assistance of counsel claims.

Generally, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because no evidentiary hearing has been held, our review is limited to mistakes apparent on the lower court record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"Effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). In order to overcome this presumption, a defendant must show that: (1) defense counsel's performance did not meet an objective standard of reasonableness under the circumstances and according to prevailing professional norms and (2) there was a reasonable probability that, but for defense counsel's errors, the results of the proceeding would be different. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446

Mich 298, 312-313; 521 NW2d 797 (1994). Additionally, a defendant must show that the result that occurred was fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

"Defense counsel must be afforded 'broad discretion' in the handling of cases . . . ." *Pickens*, 446 Mich at 325. This Court gives "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Defense counsel is not ineffective for failing to advance a meritless argument or raising a futile objection. *Ericksen*, 288 Mich App at 201. Declining to raise objections can often be consistent with sound trial strategy. *Unger*, 278 Mich App at 242, 253. Defense counsel's decisions regarding which arguments to make and what evidence he or she presents on behalf of the defense is presumed to be a matter of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). How defense counsel questions a witness is also presumed to be a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Moreover, "[j]urors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *Stevens*, 498 Mich at 177, 190.

The defense of insanity is an affirmative defense that a defendant "was legally insane when he or she committed the acts constituting the offense." MCL 768.21a(1). A defendant must demonstrate by a preponderance of the evidence that, as the result of mental illness or having an intellectual disability, the defendant "lack[ed] substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1), (3); see also *People v Lacalamita*, 286 Mich App 467, 470; 780 NW2d 311 (2009). Mental illness, in and of itself, does not constitute the defense of legal insanity. MCL 768.21a(1).

A criminal defendant is presumed competent to stand trial. MCL 330.2020(1). A defendant "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1).

Regarding the issue of jury instructions, "[a] criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Instructional errors that omit an element of an offense or misinform the jury of the elements of an offense do not require setting aside a defendant's conviction if the instructions fairly present the issues to be tried and adequately protect the defendant's rights. *Id*. at 501-502.

The elements of the resisting or obstructing a police officer offense under MCL 750.81d(1) are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, (2) the defendant knew or had reason to know that the person who the defendant harmed, obstructed, or endangered was a police officer performing his or her duties, and (3) the police officer was acting lawfully. *Quinn*, 305 Mich App at 491.

The trial court failed to instruct the jury that it must find that Detective Grove and Officer Kuhn were acting lawfully in the performance of their duties as police officers in order to find defendant guilty of the offense. Although the trial court instructed the jury that "obstruct" can

include a knowing failure to comply with a lawful command, the trial court erred by failing to instruct the jury to determine whether Detective Grove's and Officer Kuhn's actions were lawful or how the jury would make that determination of fact. Therefore, these instructions were erroneous and defective. See *Kowalski*, 489 Mich at 501; *Quinn*, 305 Mich App at 491.

Although an attorney's decision to refrain from objecting to an error can be a matter of trial strategy, *Unger*, 278 Mich App at 242, 253, we cannot conclude that defense counsel's decision not to object to this constitutional error was a reasonable trial strategy. The instructional error did not fairly present the issues to be tried because the jury was not properly informed that a finding that Detective Grove's and Officer Kuhn's actions were lawful was required in order to find defendant guilty. Because the jury was not instructed on the lawfulness element, it cannot be determined whether the jury considered that element of the charged offense. See *Kowalski*, 489 Mich at 501-502.

Moreover, we conclude that defense counsel's deficient performance prejudiced defendant because it is unclear that the jury would have determined on this record that the prosecution had established the lawfulness element beyond a reasonable doubt. Because obstructing a police officer includes failing to comply with a lawful command, see MCL 750.81d(7)(a), it is possible that the jury found that Detective Grove and Officer Kuhn gave defendant a lawful command and were acting lawfully when they initiated the traffic stop. However, it is not clear based on the record whether the jury made this finding or understood what constitutes a lawful command or lawful actions by a police officer. Although Officer Kuhn and Detective Grove testified that they activated the police vehicle overhead lights, there is a reasonable probability that a properly instructed jury would not have found beyond a reasonable doubt that the prosecution had established that Detective Grove's and Officer Kuhn's actions, including the failure to completely activate the police vehicle overhead lights to initiate the traffic stop, were lawful. Because it is reasonably probable that the jury would have reached a different result but for counsel's failure to object to the erroneous instructions, defendant has established that he was prejudiced by defense counsel's defective performance. See *Strickland*, 466 US at 687-688; *Pickens*, 446 Mich at 312-313. Therefore, we conclude that defendant was denied the effective assistance of counsel.

However, it is not apparent from the record that defense counsel erred regarding defendant's additional ineffective assistance of counsel claims. Regarding defense counsel's failure to insist on the admission of the version of the police vehicle video recording with the "trigger" indicator data and the failure to question the police officers regarding the "trigger" indicator data, defendant did not show that defense counsel's performance fell below an objective standard of reasonableness. Defendant argues that "it can be assumed that the jury did not" view the version of the video recording that showed the "trigger" indicators because neither defense counsel nor the prosecutor referred to the "trigger" indicators when discussing the video recording and questioning the witnesses during the trial. However, there was no evidence that the video recording submitted to this Court was not the version played for the jury. Additionally, the record on appeal was the original record, which included the exhibits that were introduced at trial. See MCR 7.210(A)(1). Even if the prosecutor did not introduce the version of the video recording with the "trigger" indicators, defendant did not demonstrate that the prosecutor's admission of the video recording was not a good-faith effort to admit the evidence. See *Dobek*, 274 Mich App at 70. Defendant did not demonstrate that defense counsel's trial strategy of challenging the video recording through his arguments and cross-examination of Officer Kuhn and Detective Grove fell

below an objective standard of reasonableness. See *Horn*, 279 Mich App at 39; *Dixon*, 263 Mich App at 398. Furthermore, defendant failed to overcome the presumption that defense counsel's performance constituted a trial strategy and failed to show that a different result was probable. See *Horn*, 279 Mich App at 39.

It is not apparent that defense counsel erred by failing to request a competency evaluation and a criminal responsibility evaluation. During his testimony, defendant appeared to question the police officers' conduct, to become upset, to direct his responses to the police officers' instead of the attorney who was questioning him, to answer beyond the scope of the question asked of him, and to speak at the same time as the attorneys. The trial court instructed defendant to respond to the attorneys' questions and to direct his responses to the attorneys. Defendant presented no evidence, such as medical records or an affidavit, that he suffered from a mental condition at the time of trial that affected his competence to stand trial. Additionally, defendant presented no evidence that he was incapable of understanding the nature of the trial or of assisting in his defense. Although defendant may not have been effective in assisting in his defense by his testimony, there was no indication that defendant was incapable of assisting in his defense or of understanding the proceedings against him. Because a defendant is presumed competent and there were no indications to cause defense counsel to question whether defendant was competent to stand trial, defense counsel was not ineffective for failing to request a competency evaluation or failing to request an adjournment of the trial on the first and only day of the presentation of the proofs. See MCL 330.2020(1); *Ericksen*, 288 Mich App at 201. Further, defendant did not demonstrate that there was a reasonable probability that the trial court would have determined him to be incompetent or that a competency evaluation would have resulted in a different outcome or jury verdict. See *Pickens*, 446 Mich at 312-313.

Regarding a criminal responsibility evaluation, defendant did not present any evidence to show that he had any medical or psychological condition at the time of the traffic stop and his arrest. Additionally, defendant presented no evidence that he lacked substantial capacity to appreciate the wrongfulness of his actions or to conform his conduct to the requirements of the law. To the extent that defendant was confused regarding the traffic stop and the police officers' instructions, any inability to conform defendant's conduct to the requirements of the law was the result of his confusion, rather than a mental illness or intellectual disability. See MCL 768.21a(1), (3). Therefore, defendant did not overcome the presumption that defense counsel's decision not to present the insanity defense was a trial strategy. See *Heft*, 299 Mich App at 83; *Ericksen*, 288 Mich App at 201. Further, defendant failed to overcome the presumption that defense counsel's performance constituted a trial strategy and failed to show that it was reasonably probable that a criminal responsibility evaluation or a defense of insanity would have resulted in a different outcome or jury verdict of not guilty by reason of insanity. See *Pickens*, 446 Mich at 312-313.

It is not apparent that defense counsel erred by failing to raise an objection of prosecutorial misconduct. As previously discussed, defendant did not demonstrate that the prosecutor committed misconduct by his statements during closing argument, presenting the police vehicle video recording that was introduced at trial, questioning of defendant other than his question whether Detective Grove had a reason to lie, or questioning of Detective Grove and Officer Kuhn. Notwithstanding any improper questioning by the prosecutor, the jury instructions cured any error, and the jury as the finder of fact determines whether a witness is credible. See *Stevens*, 498 Mich at 177, 190; *Dobek*, 274 Mich App at 71. Defendant did not demonstrate that he was actually

innocent or that the alleged errors of prosecutorial misconduct seriously affected the fairness of the trial. Defendant did not establish that there was plain error on the basis of prosecutorial misconduct that affected his substantial rights. Therefore, defendant failed to overcome the presumption that defense counsel's performance constituted a trial strategy and failed to show that a different result was reasonably probable. See *Pickens*, 446 Mich at 312-313.

Finally, it is not apparent that defense counsel erred by failing to raise an objection of judicial misconduct. As previously discussed, defendant did not demonstrate that the trial court committed misconduct by conducting and predicting the result of the *in camera* review of the JCPD investigative report, questioning Detective Grove and Officer Kuhn, and stating an intention to enter the jury room after deliberations had begun. The trial court's remarks regarding the *in camera* review and the communication with the jury were not made in the jury's presence, and therefore, did not improperly influence the jury. See *Stevens*, 498 Mich at 171. The jury instructions cured any improper questioning by the trial court, and the jury as the finder of fact determines whether a witness is credible. See *Stevens*, 498 Mich at 177, 190; *Dobek*, 274 Mich App at 71. Defendant did not demonstrate that he was actually innocent or that the alleged errors of judicial misconduct seriously affected the fairness of the trial. Defendant did not establish that there was plain error on the basis of judicial misconduct that affected his substantial rights. Therefore, defendant failed to overcome the presumption that defense counsel's performance constituted a trial strategy and failed to show that a different result was reasonably probable. See *Pickens*, 446 Mich at 312-313.

We conclude that defense counsel's decisions to refrain from insisting on the admission of the version of the police vehicle video recording that included the "trigger" indicator data, questioning the police officers regarding the "trigger" indicator data, requesting criminal responsibility and competency evaluations, objecting to prosecutorial misconduct, and objecting to judicial misconduct were trial strategies. See *Unger*, 278 Mich App at 242-243, 253. However, defense counsel erred by failing to object to or correct the jury instruction error. This constitutional error prejudiced defendant and requires reversal. See *Pickens*, 446 Mich at 312-313; *Quinn*, 305 Mich App at 494-495.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering

-14-